*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0552**

David Dennis Schroer,
Appellant,

vs.

Thomas Redmond, et al.,
Respondents.

**Filed January 12, 2015
Affirmed
Halbrooks, Judge**

Hennepin County District Court
File No. 27-CV-12-23469

David Dennis Schroer, St. Bonifacius, Minnesota (pro se appellant)

Ryan R. Dreyer, Morrison Sund PLLC, Minnetonka, Minnesota (for respondents)

Considered and decided by Halbrooks, Presiding Judge; Reyes, Judge; and Crippen, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**HALBROOKS**, Judge

Appellant David Schroer challenges the district court's dismissal of his breach-of-contract claim against his former employer, respondents Thomas Redmond and Wolf Springs Ranches, Inc., following a court trial. We affirm.

**FACTS**

Redmond is the sole owner of Wolf Springs. For at least ten years, Schroer worked for Wolf Springs as a property manager and for Redmond and his family as a personal assistant. In this capacity, Schroer was authorized to make purchases on behalf of Wolf Springs, for which he was later reimbursed. On October 27, 2008, Redmond terminated Schroer's employment. At the time, Schroer had a number of outstanding expense reports. Wolf Springs asked Schroer to submit his outstanding expense reports, which he did between January and early March 2009. Schroer sought reimbursement of $96,499.21. But Wolf Springs reimbursed him only for the expenses that it determined were properly supported by receipts, which it calculated to be $37,555.30, leaving $58,943.91 unreimbursed.

Schroer sued Redmond and Wolf Springs for breach of contract, contending that they had not fully reimbursed him for the business expenses he incurred while employed. There was no dispute at trial that Wolf Springs reimbursed its employees for appropriate expenses if they submitted the required documentation. But the type of documentation that Wolf Springs required for reimbursement, whether Schroer had provided that documentation, and whether Wolf Springs correctly reimbursed Schroer based on the

2

documentation he submitted were disputed issues. Schroer, appearing pro se, introduced into evidence eight detailed expense reports, along with credit-card statements that listed charges matching some of these items. He did not offer into evidence any vendor receipts. The district court heard conflicting testimony on whether and how Wolf Springs required its employees to document claimed expenses and whether Schroer had submitted the required documentation for the disputed amounts.

Schroer testified that he made purchases as directed by Redmond, that in the past he had been reimbursed after submitting only expense reports, and that neither credit-card statements nor receipts were required. But he also testified that company policy required him to use his personal credit cards and to submit a credit-card statement, although not a receipt. And Schroer testified that he sometimes used cash and that he did not have receipts for his cash purchases. But he also testified that he did have receipts for all of the purchases and that he had submitted them to Wolf Springs with his expense reports.

Both Redmond and Wolf Springs's comptroller Rhonda Brown testified that company policy required employees to submit receipts in order to be reimbursed for business expenses and that credit-card statements were not sufficient. Brown also testified that Wolf Springs had reimbursed Schroer for all claimed expenses supported by receipts. Brown utilized a spreadsheet in which she analyzed the expense reports that Schroer had submitted, including the total reimbursement calculated by Schroer, the total reimbursement amount as calculated by Brown (which differed from Schroer's total), and adjustments Brown made for duplicated items on the reports. Brown testified that she

excluded any expenses that were not supported by receipts, arriving at a reimbursable amount of $37,555.30 and issued a check in that amount to Schroer.

Following trial, the district court found that Schroer's testimony was not credible and that his expense reports were not reliable. The district court ruled that Schroer failed to meet his burden of proof and dismissed the complaint. This appeal follows.

## D E C I S I O N

On appeal from the decision of a district court sitting without a jury, we review whether the evidence sustains the findings of fact and whether the findings of fact sustain the conclusions of law and judgment. *Roberts v. Brunswick Corp.*, 783 N.W.2d 226, 230 (Minn. App. 2010), *review denied* (Minn. Aug. 24, 2010). We review findings of fact under the clearly erroneous standard, giving due regard to the district court's credibility findings and viewing the evidence in the light most favorable to the district court's findings. Minn. R. Civ. P. 52.01; *In re Pamela Andreas Stisser Grantor Trust*, 818 N.W.2d 495, 507 (Minn. 2012). Findings of fact are clearly erroneous when "we are left with the definite and firm conviction that a mistake has been made." *In re Pamela Andreas Stisser Grantor Trust*, 818 N.W.2d at 507 (quotation omitted). The district court is entitled to no deference on purely legal conclusions. *Roberts*, 783 N.W.2d at 230.

To prevail on a claim for breach of contract, a plaintiff must show (1) formation of a contract, (2) performance by the plaintiff of any conditions precedent, and (3) breach. *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011). The terms of a "contract are questions of fact to be determined by the factfinder." *Bergstedt, Wahlberg, Berquist Assocs., Inc. v. Rothchild*, 302 Minn. 476, 480, 225 N.W.2d 261, 263 (1975).

4

The plaintiff bears the burden of proving the essential elements of the claim "by a fair preponderance of the evidence." *Carpenter v. Nelson*, 257 Minn. 424, 427, 101 N.W.2d 918, 921 (1960).

Schroer argues that Redmond never disputed the fact that Redmond personally asked him to make each purchase, that when he had submitted his expense reports in the past he had always been fully reimbursed, and that he should have been reimbursed for a total of $96,499.21.

To determine whether Schroer proved performance of conditions precedent, in other words, whether Schroer submitted the necessary documentation to be eligible for reimbursement of claimed expenses, we first consider what documentation was required. After hearing conflicting testimony and crediting that of Redmond and Brown, the district court found that "Wolf Springs' reimbursement policy required receipts before an expense would be reimbursed." The district court explained that it had difficulty relying on any of Schroer's testimony, citing the inconsistencies in his testimony as to the policy and the fact that he used cash routinely, even though the policy required him to use his credit cards. Therefore, it found Schroer's testimony unreliable because it was inconsistent, unclear, and generally not believable. The district court found it difficult to believe that Redmond, who has a history of running successful businesses, would approve a reimbursement policy that did not require at least minimal documentation of expenses incurred. We defer to the district court's extensive and well-supported credibility determinations and conclude that the district court's finding that Wolf Springs required employees to submit receipts for reimbursement is not clearly erroneous.

We next consider whether the district court erred in finding that Schroer failed to meet his burden of proving that he submitted receipts documenting more than $37,555.30 in reimbursable business expenses. The district court found that the evidence of documentation supporting Schroer's expense reports was unreliable, citing missing credit-card statements, inconsistencies and discrepancies in his exhibits, the lack of vendor receipts, mathematical errors, expenses that "appeared extraordinary or unreasonable," and the months-long delay in submitting the expense reports. The district court also found that Schroer gave shifting accounts of the inconsistencies and that he "appeared to be trying to fill in the many gaps in his testimony." The district court ultimately found that it "cannot rely on [Schroer's] exhibits or his testimony to determine the extent of expense reimbursement Wolf Springs owed him."

In contrast, the district court credited Brown's spreadsheet and her testimony as providing reliable accounts of Schroer's reimbursement requests. The district court pointed to Brown's lack of mathematical errors and the consistency and precision of her calculations, which showed her careful scrutiny of the details and demonstrated a level of competence that was lacking in Schroer's calculations. The district court ruled that Schroer "failed to carry his burden to prove by a preponderance of the evidence that Wolf Springs owed him more than $37,555.30."

The district court carefully reviewed the evidence submitted at trial and made explicit findings explaining its decisions to credit the testimony of Redmond and Brown and to discredit Schroer's testimony and to rule that only $37,555.30—the amount of the check already issued to Schroer—was reimbursable. We conclude that there is no basis

for overturning the district court's credibility determinations or its finding that Schroer failed to prove that Wolf Springs owed him reimbursement beyond the $37,555.30 it already paid. Consequently, we affirm the district court in all respects.

**Affirmed.**